## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-703 (RDM)** |
| **v.** | : | |
| | : | |
| **JULIO CHANG,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Julio Chang to 45 days of imprisonment and $500 in restitution.

### I.      Introduction

Defendant Julio Chang, a former Broward County sheriff's officer, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] Although the Statement of Offense in this matter (ECF No. 35 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

1

Julio Chang pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. As explained below, a sentence of incarceration is appropriate in this case because Chang: (1) was aware of the potential for violence before he came to Washington, D.C., anticipating a "1776 Part 2 Revolution"; (2) boasted about the violent riot, by posting images captioned "The deplorables have taken back our country" and "The beginning of our Second American Revolution"; (3) penetrated the east side of the U.S. Capitol Building and walked around the Rotunda using a cellphone to take videos and/or photographs for approximately seven minutes; (4) as a former law enforcement officer, clearly understood the difference between protesting and trespassing, and knew he did not have permission to enter the U.S. Capitol Building; (5) deleted his Facebook account containing incriminating evidence after being contacted by the FBI.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the defendant's participation in a riot that succeeded in halting the Congressional certification combined with the defendant's preparation for violence, his celebration and endorsement of the violence on that day, his lack of remorse, and the potential for future violence renders a sentence of imprisonment both necessary and appropriate in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 35 (Statement of Offense).

2

*Defendant Chang's Role in the January 6, 2021 Attack on the Capitol*

Prior to coming to Washington, D.C., Chang posted to his Facebook account that he would be traveling from his home in Florida by train. In his posts, Chang discussed how he was going to part of a "1776 Part 2 Revolution" against the government.

On January 6, Chang posted a Facebook video taken near the Washington Monument which he captioned "The beginning of our second American revolution."



*Image 1: Screenshot from Facebook video*

After attending the rally near the Washington Monument, Chang arrived at the East side of the Capitol at a time when it had already been overrun by rioters.  Chang climbed the east steps of Capitol, joining a crowd of rioters occupying the location, looking out at other rioters on the East side. *See* Exhibit 1.



*Image 2: Screenshot from Exhibit 1 at 0:11*

Chang posted photographs of himself at this location, along with the caption "The deplorables have taken back our country." In one photo, Chang posed with a "thumbs-up," demonstrating his pride in participating in the riot.



*Image 3: Facebook Post*

4

At about 3:03 p.m., Chang entered the Capitol Building through the Rotunda Door, using his cellphone to record his entry. *See* Exhibit 2.



*Image 4: Screenshot from Exhibit 2 at 0:27*

Chang walked directly into the Rotunda, where he saw police wearing gas masks and heard the deafening roar of the rioters. *See* Exhibit 3 at 0:04.



*Image 5: Screenshot from Exhibit 3 at 0:04*

Chang walked around the Rotunda with his cellphone in his outstretched hand, recording the scene around him. *See* Exhibit 4.



*Image 6: Screenshot from Exhibit 4 at 0:20*

Chang continued to walk around the Rotunda for several minutes. At one point, Chang approached the west side of the Rotunda, where uniformed officers were gathering in preparation to move rioters out of the Rotunda. *See* Exhibit 4 at 1:34.



*Image 7: Screenshot from Exhibit 4 at 1:34*

As rioters began attacking the police, Chang retreated towards the east side of the Rotunda. *See* Exhibit 4 at 1:49; *see also* Exhibit 3 at :18.



*Image 8: Screenshot from Exhibit 4 at 1:49*

Chang stayed in the Rotunda, watching the rioters confront police for another minute and a half, and recording the scene with his cellphone. Chang left the Rotunda at about 3:10 p.m., and exited the building through the Rotunda Doors at about 3:11 p.m. *See* Exhibit 5.



*Image 9: Screenshot from Exhibit 5 at 0:18*

*Destruction of Evidence*

On May 31, 2021, Chang agreed to speak with an FBI Agent via telephone. During the call, Chang admitted he had been present in Washington, D.C. on January 6, but would not provide any additional information. Thereafter, Chang deleted his Facebook account (ECF 35 at ¶ 13).

Though the evidence shows Chang recorded video and took photos during his time in the Capitol, and Chang possessed a cellphone at the time of his arrest, law enforcement was unable to locate any such video or photos on the cellphone.

*The Charges and Plea Agreement*

On September 23, 2021, the United States charged Chang by criminal complaint with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). On July 5, 2023, pursuant to a plea agreement, Chang pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Chang agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Chang now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 45 days of imprisonment and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at \*5 (D.D.C. Dec. 28, 2021). As Judge Berman Jackson recently observed, "we cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power." *United States v. Cronin*, 22-cr-233-ABJ, Sent. Hrg. Tr. 6/9/23 at 20.

While assessing Chang's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like  Chang, the absence of violent or destructive acts is not a mitigating factor. Had Chang engaged in such conduct, he would have faced additional criminal charges.

As a former police officer, Chang understood the difference between lawful protest and illegal trespass; he understood that by calling for "revolution" before January 6, he was anticipating violence. Chang understood better than most the difference between pursuing legal remedies and using force in pursuit of political goals. When he arrived at the Capitol, he saw the police officers

being overwhelmed by the rioters. He knew pepper spray was being deployed, and he watched as his fellow rioters violently attacked police. Thus, Chang is in a different posture than many others who illegally entered the Capitol.

Another factor distinguishing Chang from other January 6 defendants is his decision, after he was contacted by the FBI, to delete his Facebook account. As a former police officer, Chang knew his Facebook account contained relevant evidence, not only of his conduct at the Capitol, but also of the conduct of other rioters captured in the video and photos he took that day. Chang understood better than anyone the significance of his decision to destroy evidence.

Accordingly, the nature and the circumstances of the offense establish the clear need for a sentence of imprisonment.

### B. Chang's History and Characteristics

Though Chang has no prior arrests, he owes approximately $29,000 in child support and his driver's license was suspended on three prior occasions for failure to pay child support (PSI ¶¶ 29, 38).

While Chang's prior military service and work as a police officer are commendable, this background means that Chang appreciated more than most why his actions on January 6 were improper. More than most, he understood what the police were going through that day. Chang's decision to join the riot and invade the Capitol was not just a crime, but a violation of his military oath and a betrayal of his fellow police officers.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United*

*States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that

behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

To date, Chang has expressed no remorse for his actions at the Capitol. Having demonstrated a lack of respect for the law through his conduct at the Capitol and his destruction of evidence afterwards, a sentence of imprisonment is necessary to specifically deter Chang from ever again breaking the law in pursuit of his political goals.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Chang based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Chang has pleaded guilty to Count Four of the Superseding Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than

codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the

sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants

who engaged in similar conduct to sentences of imprisonment for violations of 40 U.S.C. § 5104(e)(2)(G):

In *United States v. Pham*, 21-cr-109 (TJK), the defendant was an active duty police officer, akin to Chang's history in law enforcement.  Pham entered the Capitol for about 20 minutes, about the same length of time as Chang.  Pham also deleted evidence from his phone, similar to Chang's deletion of his Facebook account. Judge Kelly sentenced Pham to 45 days of incarceration.

In *United States v. Castro*, 21-cr-299 (RBW), the defendant live-streamed her entry into a conference room next to the Lower West Terrace tunnel. Like Chang, she was proud of her participation in the riot, and expressed it on social media. Judge Walton sentenced Castro to 45 days of incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.        Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Chang must pay $500 in restitution, which reflects in part the role Chang played in the riot on January 6.[4] Plea Agreement at ¶ 11. Chang's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 75.

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence and "offense[s] against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Chang to 45 days of imprisonment and $500 in restitution. Such a sentence promotes respect for the law and deters Chang and others from future crimes.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    _____/s/_____
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov